**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**MARC W. WEINSTEIN,**

       Plaintiff,

           CIVIL ACTION NO.

       -against-          CV - 14 – 7210 (ADS) (AKT)

**THOMAS C. KRUMPTER, Acting Police**
**Commissioner, Nassau County, New York**

**STEVEN E. SKRYNECKI, Chief of**
**Department, Nassau County Police**
**Department,**          **MEMORANDUM OF LAW IN**
          **SUPPORT OF MOTION FOR**
**DANIEL P. FLANAGAN, Commanding**  **PRELIMINARY INJUNCTION**
**Officer, First Precinct, Nassau County Police**
**Department,**

**JAMES B. MALONE, Police Officer, First**
**Precinct, Nassau County Police Department**

**JOHN DOES I –IV, Police Officers, First**
**Precinct, Nassau Police Department,**

**PAUL CAPPY, Police Officer and**
**Investigator, Nassau County Police**
**Department, Pistol License Section,**

**NASSAU COUNTY POLICE**
**DEPARTMENT,**

**and**                    Jury Trial Demanded

**COUNTY OF NASSAU**

       Defendants

TABLE OF CONTENTS

Title                                                                                              page

Table of Authorities …………………………………………….………ii

I.      Facts ……………………….  ………………………………………1

II.     Policy of Nassau County Police Department …………………. ……….2

III.    Policy as Applied ……………………….  ...………………………3

        A.      Case of Weinstein …………………………………………4

        B.      Case of Livore …………………..………………………..4

        C.      Case of Carroll ………….……….….……………………..5

        D.      History of Policy ………………………………………….6

IV.     Second Amendment Violations …………………… …………………6

V.      Violations of 4th, 5th and 14th Amendment Rights …………………. ….9

VI.     Post Deprivation Hearing Should be Extended to
        Handguns and Pistol Permits ……………………….…...……………13

VII.    Right to Injunctive Relief …………………………………………13

VIII.   New York Penal Law Article 400, Unconstitutional as Applied ………..14

Conclusion .......................……………………………………… ……………17

TABLE OF AUTHORITIES

Authority                                                                page

CASES:

Federal:

*District of Columbia v. Heller* 554 U.S. 570, 128 S. Ct. 2783 (2008) …………...7, 8 , 9

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 898 (1976) ………………………….11

 *McDonald v. City of Chicago* 561 U.S. 742, 130 S. Ct. 3020 (2010) ……………..8, 14

 *Original Fayette County Civic and Welfare League v. Elligton*,
W.D. Tenn. 309 F. Supp. 89. W.D. Tenn, 1970 ………………….……………………14

*Razzano v. County of Nassau*, 765 F.Supp.2d. 176, E.D.N.Y.  (2011) ..…10, 11, 12


State:

Biggerstaff v. Drago, 65 A.D.3d 728, 883 N.Y.S.2d 657 (3d Dep't 2009) …………16

Beach v. Kelly, 52 A.D.3d 436, 860 N.Y.S.2d 112 (1st Dep't 2008) ………………16

Broadus v. City of New York Police Dept. (License Division),
62 A.D.3d 527, 878 N.Y.S.2d 738 (1st Dep't, 2009) ………………………………16

Cuda v. Dwyer, 967 N.Y.S.2d 302 (App. Div. 4th Dep't 2013) ……………………15

*DeAngelo v. Burns* 124 A.D.3d 1156,  (3rd Dept., 2015) ………..…………………16

D'Onofrio v. Kelly, 22 A.D.3d 343, 802 N.Y.S.2d 159 (1st Dep't 2005) ..…………15

Nichols v. Richards, 78 A.D.3d 1453, 913 N.Y.S.2d 352 (3d Dep't 2010)    ……….15

Saleeby v. Safir, 289 A.D.2d 60, 734 N.Y.S.2d 139 (1st Dep't 2001) ………………15

Seamon v. Coccoma, 281 A.D.2d 824, 721 N.Y.S.2d 884 (3d Dep't 2001) ..…………15

Constitution and Statutes:

Constitution of the United States, Amendment 1 …………………………………..4

Authority                                                                    page

Constitution of the United States, Amendment 2  …….…………………………4, 7

Constitution of the United States, Amendment 4  ………….……..…………4, 9

Constitution of the United States, Amendment 5  ……………………………4, 9

Constitution of the United States, Amendment 14  ……….…………………4, 9

Statutes:

McKenney's New York, Penal Law Article 400  …….………………………14, 18

McKenney's New York CPLR, Article 78  ………………….……………….12

Treaties:

*26 Fordham Urb.L.J. 121, Novak,* (1998)  ……….………………………17

## MEMORANDUM IN SUPPORT
## OF MOTION FOR PRELIMINARY INJUCTION


I.

FACTS


On February 25, 2014, the Plaintiff MARC W. WEINSTEIN, at his home located

in Baldwin, New York, got into an argument with his adult son, Abraham Weinstein,

regarding the use of a washing machine. There was shouting between them but no

violence, no threats of violence and no brandishing of weapons.

Zoila E. Watson-Weinstein, wife of Plaintiff Marc W. Weinstein called the police.

Officer James B. Malone, of the Nassau County Police Department and another police

officer arrived, finding the home at peace, spoke with the wife and son and found that the

argument had been peaceably resolved.

Officer James B. Malone wrote his report and asked to see the plaintiff's New

York State Pistol License. The license was produced and at that point, Officer Malone

requested that the Plaintiff voluntarily turn over his firearms to the police.

The plaintiff asked if he had to surrender his guns and Malone replied that he did

not and left.

Approximately three hours later, Officer James B. Malone and four other armed

officers returned and demanded that Plaintiff surrender his pistol license and all his

firearms, pistols and long guns. Malone advised that the precinct commander had sent

them back to confiscate all his firearms as it was "department policy". Malone then

Memorandum in Support                    1

threatened that if he, Weinstein refused to do so, they would arrest him and file

"menacing" and other unspecified criminal charges against him.

Weinstein is a veteran of the New York City Fire Department, seriously injured in

the September 11, 2001 attack on the World Trade Center. Faced with the threat of

criminal charges and five armed police officers, Plaintiff opened his gun safes at the

demand of said police officers and under duress allowed them to search for and

confiscate his legally owned firearms.

In the weeks following the confiscation of his firearms, the plaintiff Weinstein co-

operated with the Nassau County Police Department, producing all information and

documents requested. Plaintiff's wife and son confirmed in writing and under oath that

there had been no violence, threats of violence or brandishing of weapons on the occasion

in question. Weinstein, both orally and in writing requested that his firearms be returned

to him. Finally, ten months after the confiscation and after filing this lawsuit, plaintiff's

pistol license and handguns were returned to him. As of the date of this motion, his long

guns have still not been returned. (**Ex. 1, Affirmation of Marc W. Weinstein**).


II.

POLICY OF NASSAU COUNTY POLICE DEPARTMENT


It is the policy, as applied, to confiscate all firearms any time there is a "domestic

incident" involving a police presence, even if there were no violence, threats of violence

or brandishing of weapons. It is policy to draw out any investigation as long as possible

and destroy the firearms under a misapplication of Penal Law §400.05 after a year has

passed.

This policy is set forth on the Nassau County Police website at:

http://nyjosh.com/firearms/permit/#DOMESTIC%20VIOLENCE, which states:

**DOMESTIC VIOLENCE**

**The policy of the Nassau County Police Department is to take a pro-active stance against domestic violence. Therefore, upon notification of any domestic situation requiring police intervention, the Police Department will require the surrender of the pistol license and all firearms of any involved licensee.**

The Nassau County Police Department Pistol License Department Handbook **(Ex. 2)** at page 17 states a licensee must report:

-any domestic dispute/disturbance involving a licensee and also involving police presence

and that the same is grounds for revocation or suspension which results in confiscation.

At page 23 the Handbook states:

. . . upon notification . . . of the existence of a volatile domestic situation, the Nassau County Police Department will require the surrender of the pistol license and firearm(s) as well as rifles and shotguns of any involved licensee pending an investigation into the facts and circumstances of the domestic incident and ongoing domestic relations of the licensee and other involved party(ies).

III.

POLICY AS APPLIED

While the efforts to prevent domestic violence is laudable, the overbroad application of this policy results in the repeated and continued violation of the 1st, 2nd, 4th, 5th and 14th Amendment rights of the plaintiff and other similarly situated persons.

A.     CASE OF WEINSTEIN

In plaintiff Weinstein's situation, it is undisputed that there was no violence, no threats of violence and no brandishing of weapons. It was a "domestic dispute", but did not require a police presence. In fact his wife, while still on the phone with the 911 operator, stated that the police were not required. (**Ex. 3, Affidavit of Zoila E. Watson-Weinstein**). When officer Malone arrived he determined that no police presence was required and left. Even though officer Malone had apprased the situation and believed that no police action was necessary, he was sent back with four other officers to confiscate plaintiff's firearms pursuant to "department policy".

B.     CASE OF WILLIAM LIVORE

The situation of gun owner William Livore was more egregious. Mr. Livore was recovering from bladder surgery, still passing blood, under medication when his wife and teenage daughter got into an argument away from the house. The daughter smashed the windshield of her mother's automobile. Three days later mother and daughter were again arguing. The daughter called the police and the police came to the house in Syosset. Mr. Livore was still recovering from surgery, passing blood, in pain and under medication, taking no part in the arguments. When the police arrived, after speaking with the wife and daughter, they asked Mr. Livore to produce his pistol permit and asked if he had any firearms in the house. He said he did, they were all legal and legally owned and secured in his gun safe and he was the only person with access. Whereupon, the officers

demanded he opened his gun safe and surrender all his firearms and pistol permit, which he did, as he was in no condition to contest the matter.

Mr. Livore is the owner of an automobile body shop and wrecker service and had a business carry pistol permit. He is often required to retrieve vehicles at times and places not deemed safe. As result of the confiscation of his pistol license he thought it prudent to pass up such jobs with the attendant economic impact on his business and income. The so called "investigation" took almost a year. In the mean time, Mr. Livore who is an avid high power rifle competitor, holding a Masters classification, purchased another AR 15 target rifle to use, as the Nassau County Police Department refused to return his firearms. Charges were filed against the daughter, but none against Mr. Livore. No Orders of Protection were issued as to any person. (**Ex. 5, Affirmation of William Lavore**). Mr. Livore was not a disqualified person and was legally able to purchase the new AR 15, showing the futility of the policy.

Nevertheless, this was a "domestic situation" with a "police presence", so even though Mr. Livore was not involved in the dispute and all his firearms were secured in a safe and not accessible to anyone else in the household, they were confiscated due to "department policy".

C.      CASE OF ANDREW CARROLL

Andrew Carroll is a young man who lived with mother at his grand mothers' house in Nassau County. Mr. Carroll lived in a separate apartment on the top floor, his mother in another apartment in the basement. In November 2014, he and his mother got into a dispute regarding fifty dollars that Andrew allegedly owed to his mother. While he was a work his mother broke into his apartment and took one of his guns. I had been left

under the bed in his locked apartment. When he got home and discovered the removal of the gun, his mother stated she had taken the gun and sold it. Upon hearing this, Mr. Carroll became concerned with his gun getting into unauthorized hands and called the police. When the police arrived they confronted the mother who admitted she had the gun in her apartment. The police confiscated all of Mr. Carroll's firearms. Since then Mr. Carroll has obtained a gun safe in which he can lock his firearms and has requested them back but as yet, some four months later they have not been returned. No charges were filed, no arrests were made and no Orders of Protection were issued.  (**Ex. 6, Affirmation of Andrew Carroll**).

Again, we have a "domestic incident" with a police presence, so they confiscated all of Mr. Carroll's firearms, again, as per "department policy". Mr. Carroll did not have a pistol permit or any handguns. He was not a disqualified person with respect to long guns so he was able to purchase other firearms, again showing the futility of the policy of the Nassau County Police Department.

D.      HISTORY OF POLICY

Michael Barbuck is a retired Nassau County police officer who retired in 1999. Mr. Barbuck states that during his time on the force it was the policy of the Nassau County Police to confiscate firearms at any excuse and to attempt to prevent their return to their owners any way they could and eventually destroy or otherwise dispose them. (**Ex.7, Affirmation of Michael Barbuck**). The policy has not changed materially since he was on the force.

IV.

SECOND AMENDMENT VIOLATIONS

The Second Amendment to the United States Constitution, which applies to the States and subdivisions thereof through the Fourteenth Amendment, provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

This was recognized to be an individual right in the case of *District of Columbia v. Heller* 554 U.S. 570, 128 S. Ct. 2783 (2008). The Court in discussing "keep arms" stated at 2792:

> No party has apprised us of an idiomatic meaning of "keep Arms." Thus, the most natural reading of "keep Arms" in the Second Amendment is to "have weapons."

> In recognizing that it is an individual right the Court stated at 2797 [ 8]:

> . . . we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."

> And again at 2799 [10]:

> There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms.

In striking down the District of Columbia's ban on handguns and in fact any operable weapon within the home the Court stated 2817 [17]:

The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights,[FN27] banning from the home **2818 "the most preferred firearm in the nation to 'keep' and use for *629 protection of one's home and family," 478 F.3d, at 400, would fail constitutional muster.

In discussing the scope of the right and level of scrutiny the Court stated at 2821 [18]:

The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.

And:

The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrongheaded views. The Second Amendment is no different. . . .And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.

In *McDonald v. City of Chicago* 561 U.S. 742, 130 S. Ct. 3020 (2010) the Court found that the right to keep and bear arms is fundamental and incorporated that right under the due process clause of the 14th Amendment, stating 791:

In *Heller,* we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense. Unless considerations of *stare decisis* counsel otherwise, a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States. See *Duncan,* 391 U.S., at 149, and n. 14, 88 S.Ct. 1444. We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller.*

Also there can be no doubt that the right includes other than handguns as the court stated in *Heller* at 2791:

. . . the Second Amendment extends, **2792 prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.

Memorandum in Support                                    8

The policy of the Nassau County Police Department is unconstitutional under any level of scrutiny as it totally deprives plaintiff and other similarly situated individuals of his rights to keep and bear arms in his home. It does so without any judicial process based solely on the policy set and as applied by the police department. Plaintiff does not contend that the defendants can never confiscate firearms. They would presumptively be able to do so where there was an Order of Protection against the firearms owner or where a crime has been committed or where there is a clear and immediate danger. But even in the last two instances due process requires an prompt post deprivation hearing before an impartial judicial officer, which brings us to the next subject.

V.

VIOLATION OF 4th, 5TH AND 14TH AMENDMENT RIGHTS

The policy of the Nassau County Police Department not only violates the plaintiff's and other similarly situated persons rights to keep and bear arms but also their rights under the 4th, 5th and 14th Amendments to the United States Constitution. The Fifth and Fourteenth Amendments to the United States Constitution provide that no State shall deprive any person of life, liberty, or property without due process of law.

In the case of a confiscation or firearm surrender in conjunction with an Order of Protection we assume that the owner was provided due process in the form of a hearing on notice before an impartial judge, in which the factual allegations were examined with the parties having an opportunity to be heard. Confiscations incident to a lawful arrest are presumably provided due process through criminal procedures. In confiscations as

involved the plaintiff and the affiants, no due process is provided in the way of post deprivation procedures.

This Court has recently addressed this very issue in *Razzano v. County of Nassau,* 765 F.Supp.2d. 176  E.D.N.Y. (2011). In that case the gun owner brought action against county, county police commissioner, and county police officers, alleging under 42 U.S.C. § 1983 that defendants violated his due process rights by failing to provide him with adequate opportunity to recover longarm rifles and shotguns that defendants confiscated from his residence. The Court found that the violation of the plaintiff's rights were a result of municipal policy. As addressed in the previous part of this memorandum of law, that policy has not changed but continues in spite of this Court's decision in *Razzano*.

In *Razzano*, with regard to the search and seizure of property this Court stated at 184 [3]:

> While there exist exceptions to the probable cause requirement for seizure of a person's property, *see, e.g., Coolidge v. New Hampshire,* 403 U.S. 443, 470 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (noting the police's power, in some cases, to seize objects "dangerous in themselves"), the Fourth Amendment's probable cause protections do not cease to operate because the possessor of property is not being arrested. Indeed, such a conclusion would afford *more* constitutional protection to an accused criminal than to a person not accused of a crime.

This Court further stated at 184 [4]:

> The defendants also assert that the Nassau County Police Department's general statutory power to "preserve the public peace, prevent crime, protect the rights of persons and property, and guard the public health" validates the seizure of the plaintiff's longarms. (Defs.' Opposition at 8.) While this power might provide a valid basis for the seizure of longarms from individuals in certain cases, it cannot supersede the Fourth Amendment of the United States Constitution, which requires either a showing of probable cause or a valid exception to this general rule. *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ("The ultimate standard set forth in the Fourth Amendment is

reasonableness. In construing this command, there has been general agreement that except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." (internal quotations and citations omitted)).

Weinstein's case does not involve any of the exceptions allowing a warrantless search. Indeed, officer Malone had been to the house, investigated the situation and concluded no further action was needed. The police did not return until three hours later. They had time to obtain a warrant. Why didn't they? Because they could not have done so because there was no probable cause.

With regard to the question of due process requirements, this Court, after reviewing the law and facts and applying the test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 898 (1976), concluded that the New York State Article 78 proceeding would not fullfill the requirements of due process 188 [11]. The Court stated at 189 [13]:

To assess whether this is a reasonable additional requirement, the *Mathews* test requires the Court to consider both (1) the probable value of this safeguard and (2) its cost to the government.

With respect to the former factor, the Court believes that a post-deprivation hearing would have significant value in preventing erroneous deprivation. First, to the extent that the police seize longarms that do not belong to the person from whom they are confiscated, a prompt hearing **\*190** will allow this to be quickly resolved. *See Canavan,* 1 N.Y.3d at 142–43, 770 N.Y.S.2d 277, 802 N.E.2d 616. More importantly, such a hearing would provide the owner of confiscated longarms a timely and inexpensive forum to challenge the government's holding of his property. Police are charged with the critical duty of protecting the public, and it is undeniable that even the best intentioned officers can err in making the on-the-spot judgments required in carrying out this duty. Timely correction of these mistakes is valuable. Likewise, for many gun owners—including, apparently, Razzano—longarms may have important sentimental value, and the prompt return of these weapons if wrongly possessed by the state is an important

Memorandum in Support                                11

government obligation. Moreover, the right to bear arms is enshrined in the Second Amendment of the United States Constitution, and although this right is by no means unlimited, ownership of guns by individuals legally entitled to those guns is a basic right. A prompt due process hearing is likely to limit the unfair curtailment of this right.

In setting out the parameters of such a proceeding this Court held at 190 [14]:

Thus, having weighed the three *Mathews* factors, the Court finds that persons **\*191** whose longarms are seized by Nassau County are entitled to a prompt post-deprivation hearing, to be held as follows:

• First, the post-deprivation hearing must be held before a neutral decision-maker.

• Second, consistent with the Second Circuit's rulings in the *McClendon* trio, the right to a prompt post-deprivation hearing only applies to seized longarms that are not (1) the fruit of a crime, (2) an instrument of crime, (3) evidence of a crime, (4) contraband, or (5) barred by court order from being possessed by the person from whom they were confiscated.

• Third, at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action—presumably forfeiture or a cause of action seeking an order of protection, although the Court does not limit Nassau County to these theories—to maintain possession of the seized longarms.

• Fourth, if the person deprived of longarms prevails at the hearing, the longarms must be returned, barring an order to the contrary from a court to whom that finding is appealed. If, by contrast, Nassau County prevails at the hearing, Nassau County must timely commence a proceeding by which it seeks to maintain possession of the longarms in question.

Neither Nassau County nor the state has complied with this directive by instituting such procedures and continue on with their unconstitutional policies. Since the directive was not included in the Orders of the Court, Nassau County cannot be held in contempt at this time, thus necessitating the Preliminary Injunction requested in this motion to prevent the continued and repeated violation of the rights of plaintiff and

similarly situated persons in Nassau County.

## VI.

## POST DEPRIVATION HEARING SHOULD BE EXTENDED
## TO HANDGUNS AND PISTOL PERMITS

The sought post deprivation hearing should be extended to the confiscation of handguns and denial, suspension, revocation or limitations to pistol permits as least as to handguns in the home. *Heller* and *McDonald* makes it clear that individuals have an enumerated, individual, fundament constitutional right to possess a handgun in the home for defense of self and family and for other lawful purposes. If the State of New York and the County of Nassau insist that one have a permit for mere possession of a handgun in the home, then it follows that one has an individual, fundamental constitutional right to a pistol permit.

The Appeal of Denial as noted at p. 12 of the Nassau County Pistol License Handbook does not meet the requirements of due process as it is only effective upon the receipt of a letter of revocation or suspension. In many cases of confiscation, no such letters are sent, the license is simply taken, leaving the gun owner in limbo for months if not years while the so called "investigation" takes place. In addition, the person before whom the Appeal is presented is a member of the same police department that has denied or confiscated the permit in the first place and therefore not impartial.

## VII.

## RIGHT TO INJUNCTIVE RELIEF

Where a State Statute or Policy is either unconstitutional on its face, or is being applied in a bad faith attempt to discourage constitutionally protected activities, federal courts should be available to fully vindicate the rights of citizens by injunction. *Original Fayette County Civic and Welfare League v. Elligton,* W.D. Tenn. 309 F. Supp. 89. W.D. Tenn, 1970 at page 95 [hn 12].

Plaintiff can show a probability of success by the fact that this court has already held the actions complained of to be in violation of the 5th and 14th Amendments and the failure to provide post deprivation hearing to be a violation of due process.

VIII.

NEW YORK PENAL LAW ARTICLE 400
UNCONSTITUTIONAL AS APPLIED

In addition, to the extent the "policy" is derived from or justified by the language of McKinney's Penal Law Article 400 that gives the licensing officer almost unlimited discretion in granting, denying , suspending or revoking pistol licenses, such law is unconstitutional, at least as applied to the keeping of firearms in the home for the purpose of defense of self and family. The constitutional problems arise from the language and its interpretation. Relevant portions are as follows:

> 1. Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant:
>
> (b) of good moral character;
> (k) who has not had a license revoked;
> (n) concerning whom no good cause exists for the denial of the license.
>
> 2. Types of licenses. . . . A license for a pistol or revolver, . . .  shall be issued to (a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper.

Memorandum in Support                    14

11. License: revocation and suspension. (a) . . . a license may be revoked and cancelled at any time . . . by the licensing officer . . .

The most recent pronunciation by a New York Appellate Court is *DeAngelo v. Burns* 124 A.D.3d 1156,  (3rd Dept., 2015). In that case a pistol licensee was involved with a dispute with his neighbors during which he displayed his loaded handgun. He was charged with "brandishing" tried and acquitted. The jury believed the "brandishing" was done in self defense. Even though he had committed no crime and had used his handgun for a constitutionally protected purpose, self defense, his pistol license was revoked. The licensing officer did not believe he had the maturity, good character, temperament or judgment to have a pistol permit. In upholding the licensing officers decision the court held 1156:

> There is no question that "[r]espondent is vested with broad discretion in determining whether to revoke a pistol permit and may do so for any good cause, including a finding that the petitioner lack[s] the essential temperament or character which should be present in one entrusted with a dangerous instrument ..., or that he or she does not possess the maturity, prudence, carefulness, good character, temperament, demeanor and judgment necessary to have a pistol permit". . . .
>
> Upon review, "respondent's resolution of factual issues and credibility assessments are accorded deference, and the determination will not be disturbed absent an abuse of discretion or a showing that [such determination] was made in an arbitrary and capricious manner".

Licenses have been revoked for leaving a handgun in the locked trunk of the licensee's car, D'Onofrio v. Kelly, 22 A.D.3d 343, 802 N.Y.S.2d 159 (1st Dep't 2005); an allegation that the licensee had hit someone with a hockey stick, Seamon v. Coccoma, 281 A.D.2d 824, 721 N.Y.S.2d 884 (3d Dep't 2001); the licensee had a business association with another alleged to be a member of organize crime, Saleeby v. Safir, 289 A.D.2d 60, 734 N.Y.S.2d 139 (1st Dep't 2001); licensee failed to notify licensing offcier that he had been arrested, although charges were dropped, Cuda v. Dwyer, 967 N.Y.S.2d 302 (App. Div. 4th Dep't 2013); licensee got into a fight (not involving guns), Nichols v. Richards, 78 A.D.3d 1453, 913 N.Y.S.2d 352 (3d Dep't 2010); for getting drunk,

Biggerstaff v. Drago, 65 A.D.3d 728, 883 N.Y.S.2d 657 (3d Dep't 2009); failed to
"voucher" his second handgun because he never used it and had forgotten about it,
Broadus v. City of New York Police Dept. (License Division), 62 A.D.3d 527, 878
N.Y.S.2d 738 (1st Dep't 2009); where licensee took his pistol on a trip to Nevada, when
he legally possess same and traveled in compliance with federal law, Beach v. Kelly, 52
A.D.3d 436, 860 N.Y.S.2d 112 (1st Dep't 2008).

In each of these cases, the entire license was revoked, denying the licensee's

enumerated, individual, fundamental right to possess a handgun in his home.

In *26 Fordham Urb.L.J. 121, Novak*, (1998) after an exhaustive review of the
New York system of handgun licensing the author concluded:

> Moreover, the State is exploiting the elusive character of gun licensing by
> denying procedural safeguards required for adjudicatory proceedings but not for
> ministerial ones, and then granting deferential judicial review only afforded to
> adjudicatory proceedings and not to ministerial ones.  This lack of fairness in the
> procedures provided in the current administrative scheme is compounded by the
> undemocratic practice of keeping information from the public.

No other enumerated, individual, fundamental constitutional right has ever been

treated in such as fashion as New York treats the right to keep and bear arms. (at least not

since post civil war and later treatment of Black Americans by the southern states). A

permit necessary to keep a handgun in the home is only issued if the applicant is of "good

moral character" and where "no good cause exists for the denial of the license". But it is

the licensing officer what decides what is "good moral character" and what is "good

cause" for denial. He has "broad discretion" and is given "deference" and his decision is

not be disturbed absent an abuse of discretion or a showing that [such determination] was

made in an arbitrary and capricious manner".

Thus, Article 400, as it applies to handguns kept in the home should be declared

unconstitutional or at least in the alternative, any denial, revocation, suspension or

confiscation of a pistol license should be subject to a prompt post deprivation hearing

before a qualified impartial judge applying standards set forth in *Heller*. Persons who

have been adjudicated insane and who have been convicted of a violent felony or who are

currently under an Order of Protection may be denied a permit. All others are entitled to

the permit under the Constitution of the United States.


IX.

CONCLUSION

Citizens have a fundamental right to keep and bear arms, at least in their homes,

for the purpose of self defense and other lawful purposes. They also have a right to be

secure in their papers and effects from unreasonable searches and seizures and should not

be deprived of liberty or property without due process of law.  Nassau County, in its

firearms confiscation policy, as applied as set forth above, violates all of these

fundamental rights of its citizens and to the effect that Penal Law Article §§ 400.00 (1),

(2) and (11) authorizes or enables those policies, it is unconstitutional. Plaintiff is

therefore entitled to injunctive relief to stop ongoing and future violation of these rights.



Dated: Brooklyn, New York
            February 25, 2015


                                                    ___/S/_____
                                                    Robert T. Bean (RB 4464)
                                                    Attorney for the Plaintiff
                                                    Law Office of Robert T. Bean
                                                    3033 Brighton 3rd Street
                                                    Brooklyn, New York 11235
                                                     (718) 616-1414
                                                    E-Mail: RBeanlaw@aol.com

To:

CARNELL T. FOSKEY
Nassau County Attorney
Richard J. Femia Deputy County Attorney
One West Street Mineola, New York 11566
(516) 571-0709
Attorney for County Defendants
Via ECF