**Law Office of Robert T. Bean**
3033 Brighton 3rd Street
Brooklyn, New York 11235
718-616-1414

Cell Phone: 484-838-9464
E-Mail: RBeanlaw@aol.com

Fax: 718-368-0981

Of Counsel for
Tanya Gendelman, P. C.

4- 9-15

Via ECF
Hon. Arthur D. Spatt
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722-9014

Re: Weinstein v. Krumpter et al
Docket No.: CV 14-7210 (ADS) (AKT)
**Letter Reply to Defendant's Opposition to Motion for Preliminary Injunction**

Dear Judge Spatt,

    I file this Reply to Defendants' Letter Opposition to Plaintiff's Motion for Preliminary Injunction pursuant to Local Civil Rule 6.1 (b). Since Defendants' Opposition was made in letter form, Plaintiff will Reply in the same format. Plaintiff's request for injunctive relief contained in paragraphs 1, 2 and 6 of his Motion are now moot as the Defendants, after almost a one year delay, after filing of this suit, after the filing the Plaintiff's Motion for Preliminary Injunction and after the Initial Conference with Magistrate Tomlinson, returned Plaintiff's firearms to him.

A.    Continuing Right to Injunctive Relief.

    The belated return of Plaintiff's property does not dispose of or eliminate Plaintiff's right to or the appropriateness of injunctive relief. If there is an indication that the government officials intend to continue the same unconstitutional practices alleged in the complaint injunctive relief is appropriate. *Tara Enterprises v. Humble, C.A. 8, 1980, 622* F2d. 200. Defendants' Opposition clearly indicates that they plan to continue the same policy and have in fact done so. See Carroll's declaration (doc. 11-5). Also, money damages alone will not address the past loss of the exercise of constitutional rights. *B.H. ex rel. Hank v. Easton Area School Dist. C.A. 3, 2013, 725 F3d. 293, cert. denied 134 S. Ct. 1515.*

B.    Defendants Have Not Complied With *Razzano*.

    If the Police Departments' revised OPS 10023, attached as an exhibit to Defendants' Opposition, is an attempted compliance with *Razzano*, it is so lame as to be not recognizable as

such. OPS 10023 provides no time limits for any investigation following confiscation or return of firearms; it provides for no prompt post deprivation **hearing** with the County having the burden of proof; it provides for no impartial fact finder or judge; all decisions are to be approved by the Chief of Department. In fact, all it does provide is another bureaucratic layer adding paperwork and delay to the return of firearms.

Contrary to the assertions in their Opposition, that the Precinct Domestic Incident Liaison Officer is a neutral judge, he is not, as his decision must be approved (by the Chief of Department). Although he is to "Ensure an immediate return of confiscated rifles and shotguns", in practice this does happen "immediately" but takes over a year in those incidents where the firearms are returned.

This Court stated in *Razzano* at 191, persons whose firearms are seized by Nassau County are entitled to a prompt post deprivation hearing, before a neutral decision maker. OPS 10023 does not provide for any "hearing" prompt or otherwise. Plaintiff Weinstein did not even hear from the Domestic Incident Liaison Officer until after a year and after this case was filed. The officer had Plaintiff get some forms completed and presumably prepared a report and forwarded it to higher authority. This was after the Pistol Licensing Division had already re-issued his pistol license and returned his handguns. (after almost a year).

A prompt post deprivation hearing would presumably be something akin to a hearing following an ex parte order. The family code provides when an ex parte order of protection is issued, the person subject to the order is entitled to a hearing within fourteen days. If the hearing is not held, the order expires. Similarly, Plaintiff suggests that a firearm confiscation, under circumstances as here, be considered the same as an ex parte order, and a hearing held promptly (at least within fourteen days) with the County having the burden of proof. If the hearing is not held, or the County's proof fails, the firearms are to be returned. Such would allow the police to confiscate firearms when they actually believe it necessary (as opposed to "because its department policy) but provide due process for the citizen. If the police cannot marshal evidence that the confiscation was justified in fourteen days, then it obviously was not.

C.   Application to Handguns

The County's entire premise regarding confiscation is erroneous as exemplified by the "Note" on page 2 of OPS 10023, that "A pistol license is a privilege." This is entirely contrary to the *Heller* and *McDonald* decisions cited in Plaintiff's Memorandum of Law. Possession of a handgun (or long gun for that matter) is an enumerated, individual, fundamental constitutional right. If a pistol license is required to possess a handgun in the state of New York, then an individual has a right to the license. If the license is withheld, taken, suspended or revoked, such actions are a deprivation of a constitution right and plaintiff and similarly situated persons are entitled to the same prompt post deprivation hearing as set forth by this Court in *Razzano*.

D.   Searches and Seizures

Defendants, in their Opposition, seem to argue that since the police department has the duty of safeguarding public safety, its members can search and seize firearms at will in total

disregard to the constitutional rights of citizens. This argument was rejected in *Razzano* at 184 and should be rejected here. Further, as applied, the investigating officer cannot exercise any judgment as firearms are confiscated whenever there is a "domestic incident" (which term is undefined) and a police presence. The OPS says firearms are to be confiscated "when necessary" but in practice it is always "necessary". See the declarations of Livore (doc. 11-4) and Carroll (doc. 11-5). In Plaintiff's case, officer Malone believed it was not necessary but was sent back to confiscate Plaintiff's firearms because it was "department policy" that is blindly followed. Neither have the Defendants explained how this policy promotes public safety when the plaintiff and similarly situated persons are not "disqualified" and can legally purchase other firearms nor why it takes the department a year to do an investigation that any gun shop can do in a couple of minutes.

In addition, Defendants claim the investigating officers determine when there is probable cause for a search and/or seizure. However, this is contrary to the 4th, 5th and 14th Amendments to the United States Constitution. The 4th Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

As this Court stated in *Razzano*:

> In construing this command, there has been general agreement that except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant."

In each case, Weinstein, Livore and Carroll, the gun owner was not arrested, no charges were filed against the gun owner, the firearms were not in "lunging distance" to present a threat to the officer and in fact were locked in gun safes or were secured by action locks. There was nothing to prevent the officers from securing the scene and obtaining a search warrant if there was indeed probable cause.

Sincerely,

Robert T. Bean

Via ECF and E-Mail
Carnell T. Foskey
Nassau County Attorney
Attn. R. Reissman
Deputy Nassau County Attorney
One West Street
Mineola, New York 11566
e-mail: RReisman@nassaucounty.gov