FILED
CLERK
8/17/2015 1:44 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARC W. WEINSTEIN,

                      Plaintiff,

    -against-

THOMAS C. KRUMPTER, Acting Police Commissioner, Nassau County, New York, STEVEN E. SKRYNECKI, Chief of Department, Nassau County Police Department, DANIEL P. FLANAGAN, Commanding Officer, First Precinct, Nassau County Police Department, JAMES B. MALONE, Police Officer, First Precinct, Nassau County Police Department, JOHN DOES I-IV, Police Officers, First Precinct, Nassau County Police Department, PAUL CAPPY, Police Officer and Investigator, Nassau County Police Department, Pistol License Section, NASSAU COUNTY POLICE DEPARTMENT, and COUNTY OF NASSAU,

                      Defendants.
------------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**
14-cv-7210(ADS)(AKT)

**APPEARANCES:**

**THE LAW OFFICE OF ROBERT T. BEAN**
*Attorneys for the Plaintiff*
3033 Brighton 3rd Street
Brooklyn, New York 11235
    By:    Robert T. Bean, Esq., Of Counsel

**CARNELL T. FOSKY, NASSAU COUNTY ATTORNEY**
*Attorney for the Defendants Thomas C. Krumpter, Steven E. Skrynecki, Daniel P. Flanagan, James B. Malone, Paul Cappy, and the Nassau County Police Department and County of Nassau*
One West Street
Mineola, New York 11501
    By:    Ralph J. Reissman, Esq., Deputy County Attorney

**SPATT, District Judge:**

This case involves a constitutional challenge to the Nassau County Police Department's policy of confiscating firearms in the course of responding to domestic incidents.

Presently before the Court is a motion by the Plaintiff Marc W. Weinstein (the "Plaintiff" or "Weinstein"), seeking a preliminary injunction preventing, during the pendency of this action, the Nassau County Police Department from retaining possession of or destroying firearms that it confiscated from his home; from confiscating or destroying the firearms of similarly situated individuals; and from continuing its firearm confiscation policy in the future.

For the reasons set forth herein, the motion is denied.

## I. Background

On December 10, 2014, the Plaintiff commenced this action against the Defendants the Nassau County Police Department (the "Department" or "NCPD"), Acting NCPD Commissioner Thomas Krumpter ("Krumpter"), NCPD Chief Steven E. Skrynecki ("Skrynecki"), NCPD First Precinct Commanding Officer Daniel P. Flanagan ("Flanagan"), NCPD Officer James B. Malone ("Malone"), and NCPD Officer and Investigator Paul Cappy ("Cappy"). Weinstein asserted claims under 42 U.S.C. §§ 1983, 1985 and 1988, arising from alleged deprivations of his First, Second, Fourth, Fifth, and Fourteenth Amendment rights.

On January 8, 2015, the Plaintiff filed an Amended Complaint, which added the County of Nassau (the "County") as a Defendant. Throughout this Opinion, the

2

County, the Department, Krumpter, Skrynecki, Flanagan, Malone, and Cappy will collectively be referred to as the "Defendants."

On February 25, 2015, the Plaintiff filed the instant motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 65, seeking a preliminary injunction and the relief outlined above.

On April 11, 2015, the Plaintiff, with leave of the Court, filed a Second Amended Complaint.

The following facts are drawn from the Second Amended Complaint and any evidence submitted in support of the instant motion.

### A. The Factual Allegations Relating to Weinstein

On February 25, 2014, Weinstein was at his home, which is located at 781 Jefferson Street in Baldwin, New York. He allegedly got into an argument with his adult son, Abraham. According to Weinstein, the two shouted at one another, but there was no violence, no threats of violence, and no brandishing of weapons. Nevertheless, Zoila Watson-Weinstein ("Zoila"), the Plaintiff's wife, called the police.

In support of his motion, the Plaintiff annexed a notarized letter written by Zoila, but he fails to specify the intended recipient of the letter. There is no addressee indicated on the letter and it is directed "[t]o whom it may concern." The letter states as follows:

> While on the call [with the 911 operator] I remember stating that something brown was brought downstairs. I think the 911 operator asked if there were guns on the premises and I stated that there were. However, [a]t no point and time did I ever say that a gun was pointed at me or my son.

3

The Defendant Malone and another unidentified NCPD officer responded to the call. The Plaintiff alleges that, upon arriving at the residence, the officers discovered that the incident between Weinstein and his son had been peaceably resolved. However, Malone allegedly requested to view the Plaintiff's New York State Pistol License. Weinstein complied. The Second Amended Complaint fails to specify the amount or type of firearms Weinstein possessed at the premises at the time in question. However, Malone allegedly requested that Weinstein voluntarily surrender his firearms, but Weinstein refused.

At this time, Malone and his fellow officer left the premises without making any arrests.

Approximately three hours later, Malone allegedly returned with four unidentified NCPD officers. According to the Plaintiff, the officers were armed and acted under color of law. This time, Malone demanded that Weinstein surrender his pistol license and firearms. Allegedly, the officers threatened to arrest the Plaintiff for "menacing" and other unspecified criminal charges if he refused to comply.

Weinstein opened his gun safe and surrendered an unspecified number and type of firearms that he alleges were legally owned. He claims to have done so under duress and without giving his consent.

According to the Plaintiff, it is the policy of the NCPD to confiscate firearms in the course of responding to domestic disturbance calls, irrespective of the nature or severity of the allegedly disturbing activity. In support of this allegation,

4

Weinstein claims to rely on "the Nassau County Police Website." See Pl. Memo of Law at 3. However, the website to which he refers is entitled "NYJosh.com," which expressly states as follows:

> This site is NOT in any way associated with the Nassau county Police Dept. or the Government of Nassau County or the State of New York. This page is provided as a public service and is not intended as a substitute for actual research on the laws of the County of Nassau and/or the State of New York.

A portion of this unofficial website reads as follows:

> DOMESTIC VIOLENCE
> The policy of the Nassau County Police Department is to take a pro-active stance against domestic violence. Therefore, upon notification of any domestic situation requiring police intervention, the Police Department will require the surrender of the pistol license and all firearms of any involved licensee. The license and firearms will be returned only after a thorough investigation reveals that there are no compelling reasons for continuing the suspension. The issuance of an Order of Protection naming the licensee as the respondent will result in the immediate suspension of a license and surrender of firearms. The license will remain suspended until the order expires or is vacated, and a thorough investigation is completed.

The website identifies the source of this passage as "Pistol License Information Handbook . . . [f]rom the Nassau County Police Department (March 1999)." A copy of the 1999 NCPD Pistol License Handbook was not provided to the Court.

However, a more recent version of the Handbook, which was revised in August 2014, was provided and contains the following similar language:

> The policy of the Nassau County Police Department is to take a proactive stance against domestic violence, specifically to protect victims of domestic violence, enforce laws and prevent future violence. Therefore, upon notification of any domestic situation where violence is threatened or alleged to have occurred or upon notification of the

5

>existence of a volatile domestic situation, the Nassau County Police Department will require the surrender of the pistol license and firearm(s) *as well as rifles and shotguns* of any involved licensee pending an investigation into the facts and circumstances of the domestic incident and ongoing domestic relations of the licensee and other involved party(ies). Nassau County Police Department policy requires an investigation before reinstatement of the pistol license can be authorized. The license and firearm(s) as well as any rifles or shotguns will be returned only after a thorough investigation reveals that there are no compelling reasons for continuing the suspension.

(emphasis in original).

The Plaintiff alleges that, in the weeks following the incident, he and his family cooperated with the NCPD by producing information and documents requested by the Department. His wife and son provided sworn written statements that, on the night in question, there had been no violence; no threats of violence; and no brandishing of weapons.

On an unspecified date, the Defendant Cappy allegedly informed Weinstein that the Department's investigation into the incident was complete, but that approval from a superior within the NCPD was required before the Plaintiff's firearms could be returned to him. Allegedly, such approval had been delayed for unspecified reasons.

Nevertheless, as of April 11, 2015, the Department had returned Weinstein's pistol license and all of the firearms it confiscated on the date in question.

The Plaintiff alleges that it is the policy of the NCPD to prevent the return of confiscated firearms, and to either destroy them or convert them to the Department's use without compensation to the lawful owner. In support of this allegation, Weinstein provides an affidavit from Michael A. Barbuck, a former

6

Nassau County Police Officer who retired in 2009. In his affidavit, Barbuck stated that, during his career with the Department, it was the NCPD's policy to confiscate firearms "whenever they could." According to Barbuck, the Department "stretched the definition of 'domestic incidents' as far as possible and if in doubt, they confiscated all firearms in the household . . ." He further stated that this policy was followed in nonviolent cases and that "[s]houting was enough [to confiscate firearms and a pistol permit] if the police were called." Barbuck also stated that it was the Department's policy to retain confiscated firearms "as long as possible and prevent their return on any excuse and destroy them after a year." Finally, Barbuck stated, without any supporting facts, that his unspecified "contacts with the department" indicate the Department's policy has not changed since 2009.

**B.     The Factual Allegations Relating to Non-Parties**

The Plaintiff's motion papers attempt to seek relief on behalf of "other similarly situated persons." In this regard, the Plaintiff's supporting memorandum of law recites facts concerning individuals by the names of William Livore and Andrew Carroll. Affidavits from these individuals are annexed to the moving papers.

However, the Second Amended Complaint identifies only Weinstein as a Plaintiff, and does not include any allegations relating to other individuals.

Moreover, the Court notes that there has been no motion for class certification and no other indication that this case is intended to proceed as a class or collective action. In fact, no one, including the two individuals described below,

7

has appeared in this case or sought to intervene. Without expressing an opinion as to whether the Plaintiff may properly pursue claims for relief on behalf of non-parties, the Court notes the following facts, drawn from affidavits submitted with Weinstein's motion.

1. **Non-Party William Livore**

Livore states that he resides in Syosset, New York, with his wife, adult son, and adult daughter.

On or about December 14, 2010, Livore's wife and daughter got into an argument that resulted in his daughter shattering his wife's car windshield. Livore was not present at the time of this incident.

Four days later, on December 18, 2010, Livore's wife and daughter again got into an argument. Livore claims to have "got[ten] things calmed down," but his daughter called the police. Livore does not so indicate, but, taking judicial notice of the fact that Syosset, New York, is located within the County of Nassau, the Court assumes that the police officers referred to in his affidavit were members of the NCPD.

According to Livore, the officers arrived and asked whether firearms were in the residence. Livore answered in the affirmative, and advised the officers that the guns were secured in a gun safe, to which he alone had access. Nevertheless, the police confiscated his pistol permit and firearms. Livore testified that approximately one year later, his permit and his firearms were returned to him.

8

However, Livore claims that the year-long separation from his firearms had a monetary effect on him. He stated that he owns a "wrecker service," which requires him to occasionally travel into locations that he does not believe are safe. Accordingly, he stated that he carries a handgun for self-protection. When the NCPD confiscated his license and firearms, he claims to have declined an unspecified number of jobs, apparently because he would not have felt safe performing those jobs without a gun. Therefore, he allegedly suffered an attendant, although unspecified, loss of income.

The Court further notes that Livore makes statements regarding a bladder surgery he underwent around the time of the confiscation of his weapons. The Court finds that these surgery statements are not relevant to the instant motion and will not consider them at this time.

### 2.   Non-Party Andrew Carroll

Carroll states that he resides in Bellmore, New York, in a home owned by his grandmother. He occupies an attic apartment, and his mother occupies a separate basement apartment.

According to Carroll, his mother claimed that he owed her $50. On September 30, 2014, while Carroll was at work, his mother removed from his apartment an AR-15 rifle which belonged to him. Apparently, Carroll's mother took the weapon "as collateral for the [$50] loan" and claimed to have "sold it or given it away to another person."

Carroll called the NCPD. When officers arrived, they discovered the missing rifle in Carroll's mother's basement apartment and confiscated it. They also confiscated another rifle and a shotgun, both belonging to Carroll.

Carroll claims that, despite efforts to retrieve his firearms from police custody, he has been unable to do so. He purchased another AR-15 rifle to "replace" the one that was confiscated.

## C. Procedural History

Based on the allegations outlined above, on December 10, 2014, Weinstein commenced this action, alleging violations of his First, Second, Fourth, Fifth, and Fourteenth Amendment rights, as well as asserting various common law claims, including conversion and intentional infliction of emotional distress.

In addition, on February 25, 2015, the Plaintiff filed the instant motion, pursuant to Fed. R. Civ. P. 65(a), seeking the following injunctive relief:

> [E]njoining all defendants and their agents, officers, contractors and/or employees:
> 1. From destroying firearms seized by the defendants from the plaintiff;
> 2. From retaining possession of said firearms;
> 3. From searching for firearms in the home of plaintiff and other similarly situated persons, without cause, where there is no Order of Protection, no domestic violence, and no arrest or charges filed;
> 4. From seizing firearms from the plaintiff and other similarly situated persons without cause, where there is no Order of Protection, no domestic violence, and no arrest or charges filed; [and]
> 5. From continuing its policy of confiscating firearms in the even [*sic*] of any "domestic incident" with a "police presence" even though there is no crime, no violence and no Order of Protection.

The Plaintiff also seeks an order directing the Defendants to do the following acts:

> 6. Immediately return to plaintiff all firearms seized from him and retained by defendants;
> 7. Within 60 days institute a procedure, in the event of any confiscation of firearms, setting forth a deadline for the return of the firearms and pistol license to their owner, of not more than five days, and if not returned by said deadline, a procedure for a hearing before a judicial officer, not more than fourteen days after said confiscation, as to the lawful reasons for retaining said firearms, with defendant having the burden of proof thereof.

On April 9, 2015, in light of the fact that the Defendants did, in fact, return to Weinstein the firearms that they confiscated, he filed a reply. In the reply, he withdrew the claims for preliminary injunctive relief contained in paragraph one, namely, preventing the Defendants from destroying his firearms; paragraph two, namely, preventing the Defendants from retaining those firearms; and paragraph six, namely, ordering the Defendants to immediately return those firearms, as those claims are now moot.

Thus, the scope of the instant motion is limited to the following preliminary injunctive relief:

> (i) an injunction preventing the Defendants from searching for and seizing firearms in the home of plaintiff and other similarly situated persons, without cause, where there is no Order of Protection, no domestic violence, and no arrest or charges filed;
> (ii) an injunction preventing the Defendants from continuing the NCPD's policy of confiscating firearms in the course of responding to domestic incidents requiring a police presence; and
> (iv) a mandatory injunction ordering the Defendants to institute a procedure within 60 days by which either (a) firearms and pistol licenses confiscated during police responses to domestic disturbance calls are returned to their owner within five days, or (b) the owner be provided a hearing before a judicial officer within fourteen days regarding the lawful reasons for retaining said firearms, with the Defendants having the burden of proof thereof.

11

## II. Discussion

### A. The Applicable Legal Standards

"'A preliminary injunction is an extraordinary remedy never awarded as of right.'" Golden Krust Patties, Inc. v. Bullock, 957 F. Supp. 2d 186, 192 (E.D.N.Y. 2013) (quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). Whether or not to grant a preliminary injunction is left to the discretion of the district court. See Sagepoint Fin., Inc. v. Small, 15-cv-571, 2015 U.S. Dist. LEXIS 64065, at *6 (E.D.N.Y. May 15, 2015) (quoting Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 511 (2d Cir. 2005)).

"A party seeking a preliminary injunction must show: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Sagepoint, 2015 U.S. Dist. LEXIS 64065, at *6 (quoting Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 242 (2d Cir. 2009)); see Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc., 696 F.3d 206, 215 (2d Cir. 2012) (reciting applicable standard); Crichlow v. Fischer, 12-cv-7774, 2015 U.S. Dist. LEXIS 18812, at *15-*16 (S.D.N.Y. Feb. 17, 2015) (reciting standard, quoting Mullins v. City of New York, 626 F.3d 47, 52-53 (2d Cir. 2010)).

"[W]here, as here, a party seeks a preliminary injunction that is 'mandatory,' *i.e.*, 'alter[s] the *status quo* by commanding some positive act,' a heightened showing

is necessary." Vringo, Inc. v. ZTE Corp., 14-cv-4988, 2015 U.S. Dist. LEXIS 71919, at *12 (S.D.N.Y. June 3, 2015) (quoting Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995)).  In this regard, such an injunction " 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' "  Id. at *12-*13 (quoting Doherty Assocs., 60 F.3d at 34).  " 'This higher standard is particularly appropriate when a plaintiff seeks a preliminary injunction against a government body' " such as a municipality and its police department.  N.J. v. New York, 872 F. Supp. 2d 204, 211-12 (E.D.N.Y. 2011) (Spatt, J.) (quoting Cave v. East Meadow Union Free Sch. Dist., 480 F. Supp. 2d 610, 631-32 (E.D.N.Y. 2007)).

As to the Plaintiff's burden of establishing irreparable injury in the absence of an injunction, "[s]uch injury must be 'neither remote nor speculative, but actual and imminent and . . . cannot be remedied by an award of monetary damages.' " Vringo, Inc. v. ZTE Corp., 14-cv-4988, 2015 U.S. Dist. LEXIS 71919, at *27-*28 (S.D.N.Y. June 3, 2015) (quoting Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995)).  Indeed, a bare assertion of a constitutional injury, without evidence "convincingly show[ing]" the existence of noncompensable damages, is insufficient to automatically trigger a finding of irreparable harm.  KM Enters. v. McDonald, 11-cv-5098, 2012 U.S. Dist. LEXIS 20469, at *10-*11 (E.D.N.Y. Feb. 16, 2012) (Spatt, J.) (citing Savage v. Gorski, 850 F.2d 64, 68 (2d Cir. 1988)), aff'd, 518

F. App'x 12 (2d Cir. 2013); see Donohue v. Mangano, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012) (Spatt, J.).

"'The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction.'" 7-Eleven, Inc. v. Khan, 977 F. Supp. 2d 214, 234 (E.D.N.Y. 2013) (Spatt, J.) (quoting Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002)).

In this regard, "[t]he court must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm . . . Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are adequate to compensate for that injury.'" Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)).

**B.     As to Whether the Court Should Grant the Preliminary Injunction**

A preliminary injunction is inappropriate here because the Plaintiff fails to identify any actual and imminent harm that he will suffer if an injunction does not issue. Indeed, because Weinstein's pistol license and firearms have been returned to him, and he does not allege any reasonably foreseeable possibility of having them re-confiscated during the pendency of this action, there is no evidence suggesting that he is likely to suffer any injury if he does not succeed on the instant motion, but ultimately prevails on the merits of his claims. This is especially true because

14

the Second Amended Complaint contains a claim for monetary damages, including punitive damages, for the past deprivation of his rights. In the Court's view, there is no risk of an imminent noncompensable injury in the absence of a preliminary injunction.

While the Court is sensitive to the fact that a presumption of irreparable harm generally attaches to alleged deprivations of constitutional rights, see Donohue, 886 F. Supp. 2d at 150, the Court cannot discern of any such rights that will be impaired during the pendency of this case. In this regard, Weinstein seeks to enjoin the Defendants from searching for and seizing firearms in his home and the homes of similarly situated individuals – a theoretical Fourth Amendment violation. However, he points to no evidence beyond his prior experience and the existence of the NCPD policy that such a violation is likely to occur.

The Court is not persuaded by the accounts of Weinstein, Livore, and Carroll, that the subject policy is being regularly applied in an unconstitutional manner, so as to require immediate cessation. Rather, the Court notes that, in all three cases, domestic disputes became sufficiently serious so that the police were called to intervene. In Weinstein's case, his wife called the police during an altercation between him and his adult son; she informed the 911 operator that "something brown" had been carried downstairs where the men were arguing; and notified the operator that weapons were present in the home. In Livore's case, two incidents between his wife and adult daughter over the course of four days, one of which resulted in the intentional destruction of a car windshield, prompted Livore,

15

himself, to call the police. In the case of Carroll, he called the police to report that his mother had stolen a high-powered assault rifle and "sold it or g[ave] it to another person." The fact that Carroll's mother had not actually sold or given away the weapon does not alter the Court's reasoning. On the contrary, the undisputed evidence demonstrates that, in connection with a domestic dispute, Carroll's mother appropriated a powerful firearm that, so far as the evidence shows, she was not licensed to possess or use.

In the Court's view, these occurrences do not involve unsolicited intrusions into the privacy of those involved. Rather, in each case, the police were called in connection with serious domestic disputes. Thus, the Court finds Weinstein's characterization of the confiscations as occurring "without cause," and his description of the events as involving "no domestic violence," to be without merit.

Moreover, Weinstein and Livore each concede that their firearms were returned to them. Carroll was able to purchase a new rifle while his other two rifles and his shotgun were in police custody. Each man claims damages that are purely compensable monetarily, namely, the cost of a replacement weapon and alleged lost business income. None assert that there is any plausible risk of an actual and imminent constitutional violation if a preliminary injunction does not issue. Thus, the Plaintiff's motion, to the extent it seeks to prevent the Defendants from searching for and temporarily seizing firearms in his home and the homes of similarly situated individuals, is denied.

16

Similarly, Weinstein also seeks to enjoin the Defendants from continuing to enforce the subject policy, but fails to identify which of his particular constitutional rights will be actually and imminently affected if his request is not immediately granted.

In this regard, the record is insufficiently developed to permit the Court to conclude that Weinstein's singular experience, even as amplified by the experiences of Livore and Carroll, justifies discontinuing a policy rationally intended to bolster public safety. Indeed, the Defendants contend that "[p]olice officers responding to the scene of reported domestic violence . . . are charged with the duty to preserve the public peace, prevent crime, protect[ ] the rights of persons and property, and guard the public health." Thus, "[i]n the interest of preserving lives and the public peace, it is the officer's responsibility to determine if there is a threat of violence from guns even in the absence of a crime or Order of Protection."

Weinstein, who bears the increased burden of proof on this motion, does not address the public policy considerations underlying the Department's confiscation policy. Nor does he present any evidence that, as a general matter, the policy fails to accomplish its goal of enhancing public safety. Rather, he asks the Court to immediately order the termination of the Department's policy based solely on allegedly unconstitutional applications of the policy in three instances over the course of five years. The Court notes that each of these instances involved viable firearms in antagonistic domestic situations that could have been dangerous.


In sum, the Court is unwilling to grant such an extreme remedy on the evidence provided. In this regard, Weinstein has not met his burden of justifying the need to suspend police activity aimed at removing guns from potentially serious domestic situations that result in police intervention. Indeed, it may be true that the present policy occasionally would deprive nonviolent and law-abiding individuals of their firearms during the pendency of a police investigation. Also, apparently, some of these investigations take longer than certain gun owners would like. However, at this juncture, without evidence that the police were or are likely to actually and imminently act in a way that violates Weinstein's constitutional rights, the individualized accounts presented here do not support a finding that the policy is unconstitutional as applied, requiring its immediate discontinuance.

Accordingly, the Plaintiff's motion, to the extent it seeks to prevent the Defendants from continuing the Department's firearm confiscation policy in the course of responding to domestic incidents, is denied.

Finally, having found no basis for enjoining the continuance of the subject policy, there also is no basis for replacing that policy with the one proposed by Weinstein. As noted above, Weinstein proposes the implementation, within 60 days:

> [Of] a procedure . . . by which either (a) firearms and pistol licenses confiscated during police responses to domestic disturbance calls are returned to their owner within five days, or (b) the owner be provided a hearing before a judicial officer within fourteen days regarding the lawful reasons for retaining said firearms, with the Defendants having the burden of proof thereof.

In this regard, the Court reiterates that a mandatory injunction which requires a party to take some affirmative action carries a heightened burden. In this case, Weinstein was required to make a "clear showing" that he is entitled to the relief requested, namely, that he is entitled to have the proposed procedure, which, apparently, he designed himself, implemented by Nassau County. The Court finds that he has not done so.

In fact, Weinstein presents no evidence whatsoever of the procedure's feasibility or effectiveness. He does not allege that the proposed policy is derived from meaningful research or planning. Nor does he purport to have any knowledge of the legal, administrative, or logistical implications of forcing the County or the NCPD to implement such a procedure. Most importantly, he does not claim that, in the absence of this particular procedure, his constitutional rights will be actually and imminently injured.

Moreover, in response to the instant motion, the Defendants contend that a Departmental procedure for the return of confiscated weapons already exists. Consistent with this contention, the Defendants attached for the Court's review a document entitled NCPD Department Procedure OPS 10023, Removal and Disposition of Weapons—Domestic Incidents/Threats to Public Safety. Without expressing an opinion as to the legal or practical sufficiency of this procedure, which presumably will be the subject of discovery in this case, the Court finds Weinstein's argument in favor of replacing it with his own proposal to be unpersuasive.

In this regard, Weinstein calls the Department's existing policy "lame." He states that the Department's procedure "provides no limits for any investigation following confiscation or return of firearms; it provides for no prompt post deprivation hearing with the County having the burden of proof; it provides for no impartial fact finder or judge; all decisions are to be approved by the Chief of Department. In fact all it does provide is another bureaucratic layer adding paperwork and delay to the return of firearms."

In the Court's view, Weinstein's recommendations are not legal or compelling reasons for granting the preliminary injunction he seeks.

The Court finds that the Plaintiff has not met his burden of demonstrating an essential element of a preliminary injunction, namely, the likelihood of irreparable harm in the absence of such an injunction, and his motion is denied in its entirety.

Having so held, at this time, the Court need not reach the element of whether Weinstein is likely to succeed on the merits of his claims.

### III. Conclusion

Accordingly, based on the foregoing, the Court denies the Plaintiff's motion for a preliminary injunction.

**SO ORDERED**

Dated: Central Islip, New York         */s/ Arthur D. Spatt*
August 17, 2015                         ARTHUR D. SPATT
                                        United States District Judge